## COURT OF APPEALS.

THE REFORMED PROTESTANT DUTCH CHURCH OF WESTFIELD,
STATEN ISLAND agt. SUSAN D. BROWN, executrix of DAVID
BROWN, deceased.

Where the decision of a referee *on a question of fact* is affirmed by the court at
general term, it is *conclusive;* that question cannot be reviewed by this court.
Where an individual at the formation of a *religious society,* promises by *subscrip-
tion* to pay a certain sum towards the erection of a church edifice, and a further
yearly sum for the support of the minister, the contract is binding, notwithstand-
ing the society was not legally *incorporated* until some time afterwards, and the
church edifice was not then completed.
It is not necessary that the *promise* by the subscription should be to or with the
society in its *corporate capacity.* The society on becoming incorporated is,
through its trustees, vested under the statute with authority to demand and re-
ceive the subscription.

*September Term,* 1861.

THIS action was brought against the defendant as execu-
trix of David Brown, deceased, to recover $500 upon a
subscription by the testator for the erection of the church
edifice of the plaintiffs ; also $100 subscribed by him to-
wards the salary of the minister.    The referee, by his

report, found the following facts : That the plaintiffs are a religious society, duly organized and incorporated according to the laws of this state, as " The Reformed Protestant Dutch Church of Westfield, Staten Island." That David Brown was, on or about the 26th day of February, 1849, indebted to the plaintiffs in the sum of $600, as follows : $500 upon and as a subscription to build a house of worship for the plaintiffs, The Reformed Protestant Dutch Church of Westfield, Staten Island, which sum the said David Brown promised and agreed to give and pay towards the erection and building of the said church edifice, and a sum of $100 a year for the support and maintenance of a minister of the gospel for said church. That afterwards, and after the church edifice had become nearly completed, the said Brown again promised and agreed to give and pay towards the erection and building of the said church edifice the sum of $500, and the said sum of $100 a year for the support and maintenance of a minister of the gospel for said church, and expressly waived the operation and force of a clause in an article of agreement or statement made and signed on the 9th day of April, 1849, in relation to the indebtedness of the church. That the said David Brown was repeatedly called upon to pay the plaintiffs the sum of $600, but did not pay the same. That the plaintiffs were legally incorporated as a church, on the 11th day of September, 1849, and the act of corporation and certificate of election of officers of the church or society was duly and legally acknowledged, and was recorded on the 31st day of June, 1851, in the office of the clerk of Richmond county, and that the original formation of the said society and subscription was on the 26th day of February, 1849. That the said church was so completed and used, as was intended, for public worship, a minister employed, and the society was free from debt, within the meaning of the article of April 9, 1849, signed by David Brown and others. That said Brown had departed this life, leaving sufficient assets

to pay all debts owing by him, and that on or about the 3d day of February, 1853, letters testamentary on his estate were granted and committed unto his widow, Susan D. Brown, executrix named in the last will and testament of said David Brown, deceased. And that such executrix entered upon her duties as such, was duly qualified, took possession of the goods, chattels and credits of said David Brown, deceased, according to law, and that she had sufficient money in her possession, arising from the estate of the said David Brown, deceased, to pay all debts due from the estate ; and that the plaintiffs' demand, as set forth in the complaint, had been repeatedly presented to said executrix for payment, and payment demanded, previous to the commencement of this action, and that she had neglected and refused to pay the same ; and that there is now due from Susan D. Brown, executrix of David Brown, deceased, to the plaintiffs, the sum of $959.33, for principal and interest, as claimed in the complaint. From the facts so found and reported by him, he decided and reported as matters of law, that the plaintiffs were entitled to judgment against the defendant, as such executrix, for the sum of $959.33, together with costs. For which sum judgment was entered, at a special term, in favor of the plaintiffs.

An appeal was taken by the defendant to the general term, where the judgment at special term was affirmed, (see 17 How. Pr. R., 287, and 29 Barb., 335.) From this judgment the defendant appealed to this court.

J. S. L. CUMMINS, for appellant.

1st. The referee erred in finding that David Brown, deceased, was indebted to the plaintiffs, on the 26th day of February, 1849, in the sum of $100, with interest from that day, which he had " promised and agreed to give for the support and maintenance of a minister of the gospel for said church."

Because there was no minister connected with the church

during the period laid in the complaint. (*See Com., fol.* 6–98 ; *Case, fol.* 59 ; *Martin* agt. *Hynd, Doug.*, 142 ; *Cowp.*, 437.)

2d. The referee erred in finding that plaintiff was legally incorporated as a church on the eleventh day of September, 1849.

In order to be legally incorporated, it was necessary that a certificate of incorporation should be signed, acknowledged and recorded, and then, and not until then, they became a corporation. (1 *R. S., chap.* 18, *title* 5, *art.* 1*st, sec.* 2, *last ed.* ; *The First Baptist Society* agt. *Rapalee*, 16 *Wend., p.* 605.)

In this case the certificate was signed on the 11th of September, 1849, but not acknowledged or recorded until the thirtieth day of June, 1851.

3d. The church not being, at the time of the subscription incorporated, it could not be a party to a contract; therefore the contract with David Brown could not have been made with plaintiffs, nor has it been assigned to them.

4th. There was no act of David Brown, deceased, after the plaintiffs became incorporate, from which an implied request on the part of the testator to the plaintiffs could be raised to proceed on the faith of the original promise, or from which an implied promise to reimburse plaintiffs could be raised.

In all the cases relied on by the court below, there were such acts, or there was a promise to pay when the company was organized, and the cases turned upon such implied requests and promises. (*The Hamilton & Deansville Plank Road Co.* agt. *Rice*, 7 *Barb. S. C. R., p.* 159.)

The " certificate of stock was made out and delivered, and he accepted it," and the case turned upon such delivery and acceptance. (*Stanton, Pres.,* agt. *Wilson*, 2 *Hill*, 153.) In this case the articles " declared that the association should commence on 1st January, 1839," and the sub-

scribers engaged " to pay to the directors or such person
or persons as they should appoint."

The court held, COWEN, J., that " in legal effect, then,
the contract of the defendant was made on the first of Jan-
uary, and was then to pay the corporation the amount sub-
scribed." (*Trustees of Farmington Academy* agt. *Allen*, 14
*Mass. R.*, 172 ; *The Limerick Academy* agt. *Davis*, 11 *Mass.*,
113 ; *Scotts' Charitable Society* agt. *Shaw*, 8 *Mass.*, 532 ;
*Comin's Dig., tit. Action upon the case upon assumpsit, f.* 8 ;
*Stewart* agt. *Hamilton Col.*, 2 *Denio*, 417.)

5th. There is no promise contained in the book of sub-
scriptions for a Reformed Dutch Church in Westfield, Sta-
ten Island, to pay the corporation after incorporate, or, in
fact, to pay any one.   The subscription was not absolute,
but merely " a preliminary step" to ascertain whether they
would " be warranted in proceeding with the undertaking."

6th. By the terms of the agreement, they were not to
proceed with the building unless they had " money in hand
sufficient to cover the entire expense of the building." This
they did not have, and therefore David Brown, deceased,
was not bound to pay his subscription.

7th. By the terms of the agreement, the church was to
be free from debt, but it was not at the time of its comple-
tion, and never had been.

JOHN FITCH, *for respondent.*

I. The complaint shows the amount claimed,—the sub-
scriptions,—the death of Brown,—the fact of leaving am-
ple assets,—the fact that Susan D. Brown is executrix,
&c., &c., with sufficient money in her possession, &c., &c.,
—the proper demand, &c.,—her refusal to pay; plaintiff
an incorporation.   The complaint, at folios 5 and 6, sets
forth the way and manner the debt accrued,—the facts in
relation thereto,—the promises and agreements of the said
Brown in his lifetime,—the building of the church,—the
employment of a pastor, and all that was requisite and neces-

sary to do in the premises; the fact of the subscriptions, and the non-payment thereof, &c. &c., and all the necessary averments.

The answer is a general denial, as it were, of the several allegations set forth in the complaint.

II. The proof on the part of the plaintiff is perfect, complete and undisputed.

The documentary proofs are,—1. Proof of demand of plaintiff's account. 2. Original subscription books, in Brown's own handwriting. 3. Original subscription roll for a minister, &c., in Brown's handwriting. 4. The application for incorporation, &c., &c., the election of officers, &c., &c. 5. The organization as a church. 6. Memorandum, showing the way the account stood, and a statement of facts. 7. A request of the defendant's lawyer for a copy of the plaintiff's claim and demand in the suit, and to see the subscriptions, &c. 8. The death of Brown, and appointment of defendant as executrix, &c., and assets in the hands of executrix, all admitted. The estate of Brown was about eight hundred thousand dollars. 9. The exemplified copy of the appointment, &c., of the defendant as executrix.

The oral testimony of the witnesses, Jessup and Prall, is clear and positive, and shows the entire history of the transactions.

III. The fact of Brown's waiving all the reservations in regard to a debt on the church, and directing the officers to go on and finish the church, is clearly proved. This was after the filing of the article of incorporation. The church had become an incorporation, and all the work was done and paid for; the fact that the church was out of debt, Jessup footed the balance and paid all the bills, is clearly proven.

It was after all this had been done, that Brown frequently told those in charge of the erection of the church edifice " to go on and finish it, and he would pay his subscription."

On the 30th day of June, 1851, the articles of incorporation were duly acknowledged, filed and recorded in the office of the clerk of the county of Richmond, but made and executed 11th September, A. D. 1849, and acted upon by plaintiff as well as by Brown.

The church was finished in 1851, say 10th November, 1851. Brown left Staten Island in the fall of 1851. Jessup and Prall found him in New York, in Columbia street, the same fall after he left the Island, and then he again promised to pay up and settle the subscription.

After the 28th of October, when $1,898.75 had been paid out, for on the 2d November, 1851, only $1,222.40 had been collected, Jessup had paid all the bills, and he with Prall went in search of Brown for money; when Brown again (as he had done repeatedly before) promised to pay. Acting upon the faith of it, as they had done previously, they had purchased timber; and after the $1,000 were paid in by the Collegiate Church, Jessup footed the entire bill of $358.44, which Brown's subscriptions would have paid with everything, and a little surplus over. Brown told them, at the conversation in the fall of 1851, to "go on and get your subscriptions and build the church," &c. They did so. Jessup and Prall had a right to suppose Brown would pay his subscription. And with his subscription the church would have been clear of debt, with a little surplus over.

The purchasing the last bill of lumber, the obtaining the $1,000.00 from the Collegiate Dutch Church, the calling on Brown with Exhibit "No. 6," the paying up by Jessup of the $358.44, were all in the fall of 1851; Brown knew of, and approved, and assented to the whole of those transactions. He saw Exhibit "No. 6" about the month of September or October; he was pleased with what had been done, and promised to pay his subscriptions.

IV. The paper at folio 21 was a *preliminary* paper, without date, to be in force if money enough was raised, &c. Money enough was subscribed, and it must be con-

sidered as a paper bearing date as of the day the articles of incorporation were filed in the county clerk's office, June 30th, 1851 : all the papers should be considered one instrument, and form the articles of incorporation, as in the case of the *Troy & Rutland Railroad Company.*

This case is similar to the case of "*Lake Ontario Railroad Co.* agt. *Mason*," *at page* 463 : "Until the incorporation of the Company (church) was perfected, the other subscribers had an interest in its execution and performance, of which they could not be deprived by the act of the defendant. After the articles were filed, and the church had a legal existence, it acquired a vested interest in the defendant's agreement. (9 *Barb.*, 202; 15 *id.*, 249; 1 *Kernan*, 102; 2 *id.*, 18 ; 2 *Hill*, 135.)

In *Small* agt. *Herkimer Manufacturing Co.*, (2 *Comstock*, 330,) the court of appeals held, "The subscription must be construed, therefore, as if all the provisions of the statute affecting the liability of the subscriber, or his title to the stock purchased by him, were by him incorporated in his agreement."

It was of no consequence to any one when the articles of incorporation were filed. For "a subscription made before a corporation is *in esse* with a view to a future incorporation is binding; and the corporation when organized can sustain an action upon it," 29 *Barb.*, 335 ; 7 *id.*, 157; *and at page* 153 *in* 2 *Hill, and at p.* 172 *in* 14 *Mass. R.*, the court held that "A recovery may be had on such subscriptions when no company or corporation was in existence at the time."

In the 7th *Barbour, at page* 165, the court says, "In the case of money subscriptions for charitable purposes, which embrace donations for religious or literary institutions, it has been held that there was no necessity for a personal pecuniary benefit to be derived by the subscription." The same doctrine is held in 6 *Pickering*, 427, and by the court of appeals, 2 *Kernan, p.* 24.

In 2 *Denio, page* 417, the court held, "The mutual prom-

ises of the several subscribers constitute the consideration;" and 2 *Denio*, 45, is cited to show that "The church to be created was a valid consideration, and the subscription binding," as in 2 *Hill*, 153 ; 14 *Mass. R.*, 172.

So far as Brown was concerned, he acted under the articles of incorporation from their date of execution, viz., September 11th, 1849, and frequently waived all reservations in the papers, and proceedings affirmed, and was pleased with all they did, and always intended to pay his subscriptions.

This subscription was for a religious society. It belongs to the church corporation; and the corporation is the legal owner and holder thereof, being the real party in interest. Therefore, this suit was correctly brought in the corporate name of the church. (*Code* § 111; 9 *Barbour*, at p. 206; 2 *Denio*, 417; 3 *Pickering*, 325.)

V. As to the consideration of the $100 subscription for the minister, they had preaching in 1849, in the school-house, and for six months previous to the 4th day of May, 1849, the gospel had been preached for about six months, with steadily increasing attendance and interest.

Rev. J. A. M. Latourette was a brother-in-law of Mr. Brown. Another minister was called on the 9th September, 1851.

On the 10th of September, 1851, they called on Brown, and showed him the Exhibit "No. 6." He was then satisfied, and promised to pay his subscription; which would, as Jessup swears, have paid up all, and left a surplus in the treasury.

On the 10th day of September, 1851, they got $1,000 from the Collegiate Church; and that was the time they called upon Brown, as by Exhibit "No. 6." They received $358.44 more, and Brown's $500 would have paid up all and left a surplus.

The preaching of the gospel is a sufficient consideration to sustain the subscription of the sum of $100.00 yearly, for the support of the minister. (7 *Johnson*, 112; 20 *id.*,

12.) And Brown's signature to the original papers author-ized, by statute, the giving of them in evidence. (*Laws* 1833, *ch.* 271, § 9; 20 *Johnson*, 12; 7 *id.*, 112.)

No objection or exception taken to the testimony of either of the witnesses, or to the introduction of any of the Exhibits.

VI. The referee found, as a matter of fact and law, that there was due to the plaintiffs, &c., by the defendant, &c., the sum of $959.33, and costs, and that the church was free from debt, within the meaning of the article of April 9, 1849, &c., and found all the facts as proven by the plaintiff.

This is a finding of the referee upon a question of fact, where the facts were undisputed; and the finding of the referee is in all respects in strict accordance with the ad-missions, proofs, exhibits, and for the amount proven to be due. It is, in all respects, the same as the finding of a jury; and there is no reason to disturb it. It comes within the rule laid down by the court of appeals, in *Davis* agt. *Allen*, (3 *Coms.*, 168, *and the cases there cited; see also*, 23 *Barb.*, 561.)

The costs in this case were given by authority of the court, under the Code, (§ 317;) see order of the special term, September 17th, 1857, in this cause. Such an order should have been appealed from, as an order of a special term, and cannot be reviewed or reversed on this appeal. (*See Code*, § 350.)

There was no departure, by the officers of the church, in the building thereof, as in any way or manner released Brown from either of his subscriptions; and his subsequent waiver of any such change or alterations of their agree-ment, not to have a debt upon them, and his express direc-tions to them to "go on, and complete the church," brings this case within the rule laid down in *Troy & Rutland R. R. Co.* agt. *Kerr*, and in the case *Fort Edward & Fort Miller Railroad* agt. *Paine*, (17 *Barb. S. C. R.*, *pp.* 567 *and* 607,

*and the great number of cases therein cited in each case; see also*, 23 *Barb.*, 436.)

The plaintiff was duly organized and incorporated, according to the laws of this state, by virtue of the act entitled " An Act for the Incorporation of Religious Societies," passed April 5, 1813, sess. 36, ch. 60, 3d vol. R. S., 2d ed., 206, § 2, as to Dutch churches. The certificate was properly acknowledged and recorded. (*Methodist Union Epis. Church* agt. *Picket*, 23 *Barb.*, 436 ; *New Clerk's Assistant, p.* 99, *as to the form of the certificate;* 11 *Wend.*, 604.)

By the court, LOTT, J. The decision of the referee having been affirmed by the supreme court, is conclusive on the question of fact in this case. (*Code*, § 272 ; *Borst* agt. *Spellman*, 4 *Coms.*, 284–289 ; *Dunham* agt. *Watkins*, 2 *Kern.*, 556–560 ; *Griffin* agt. *Marquardt*, 17 *N. Y. R.*, 28 ; *Hoyt* agt. *Thompson's ex'r*, 19 *id.*, 207–211 ; *Miller* agt. *Schuyler*, 20 *id.*, 522, &c. ; *Carman* agt. *Pultz*, 21 *id.*, 547.) We must therefore assume the facts found by the referee to be correctly found ; and as no exceptions appear to have been taken to any decision relative to the admissibility of evidence, or otherwise, during the process of the trial, the only question to be considered is, whether those facts justified the conclusion of law to which the referee arrived.

It appears by his finding, that a religious society was formed on the 26th day of February, 1849 ; that it was subsequently incorporated as a church in due form by the name of The Reformed Protestant Dutch Church of Westfield, Staten Island, and that the said corporation is the plaintiff in this action ; that David Brown, the testator of the defendant, on the day of the formation of the society, promised and agreed, by subscriptions made by him, to give and pay the sum of five hundred dollars towards the erection and building of a church, and the further sum of one hundred dollars a year for the support and maintenance of a minister of the gospel for said church, and that he

afterwards, and after the church building had been nearly completed, again promised and agreed to give and pay the said sums for the objects specified, and expressly waived the operation and force of a clause in an article of agreement, on a statement made and signed on the 9th day of April, 1849, in relation to the indebtedness of the church, (the nature of which does not, however, appear;) that Brown has departed this life, leaving sufficient assets to pay all debts owing by him, and that on or about the 3d day of February, 1853, letters testamentary on his estate were granted to the defendant; that she has assumed the duties of executrix; that the plaintiffs' demand, as set forth in the complaint, has been repeatedly presented to her for payment previous to the commencement of this action, and that she has neglected and refused to pay the same.

These are all the facts I deem pertinent or material to the question to be considered by this court. Whether the plaintiffs were incorporated on the 11th day of September, 1849, as found and decided by the referee, or on the 31st day of June, 1851, when the certificate of incorporation was acknowledged and recorded, as claimed by the counsel of the defendant, is wholly immaterial. They were in fact incorporated long before the commencement of this suit.

The facts above stated do not show, nor is it expressly found by the referee, to or with whom the promise or agreement of Brown was made; but it does appear that it was made at the time of the formation of the society, and that it was made by subscription. It will, therefore, in the absence of an express statement or finding, be presumed on appeal, that it was a legal subscription in and by which he, in some way, legally obligated himself to pay the sums subscribed for the use and benefit of the society, and in carrying out the objects contemplated. This presumption is fully warranted by the rule laid down by this court in *Carman* agt. *Pultz*, (*supra*,) " that error on the part of the court below will not be presumed, but must be made clearly to

appear.    Hence it is incumbent upon the appellant to take care so to present the facts upon which the case depends, as to show affirmatively that an error has been committed. This court will presume nothing in favor of the party alleging the error, but if compelled, through the imperfection of the statement of facts, to resort to presumptions at all, will adopt such only as will sustain the judgment;" and " where, as in this case, there is an evident omission of important facts in the statement or report, we must presume these facts to have been such as would warrant the judgment rendered."

I will only add, that it was not necessary that the promise or agreement should be to or with the plaintiffs in their corporate capacity.    The general statute regulating the incorporation of religious societies, (3 *R. S.*, *p.* 282,) expressly provides by section 4, that the trustees of every church, after it is incorporated, are authorized and empowered to take possession of all the temporalities belonging to the church, whether given, granted or devised directly to the church, or to any other person for its use, and also in its corporate name to sue and recover, hold and enjoy all the debts, demands, rights and privileges belonging thereto, in whatsoever manner the same may be held, as fully and as amply as if the right or title thereto had originally been vested in the said trustees.

The plaintiffs, therefore, on becoming incorporated, became vested with the right to demand from Brown the amount of his subscription. (*See, also*, 2 *Hill*, 153 ; 7 *Barb.*, 157, *and* 14 *Mass. Rep.*, 172, *cited by the supreme court.*)

There is nothing in the facts disclosed by the referee's decision, which requires or demands the interposition of any technical rule of law to defeat the benevolent or religious intentions of the testator in forwarding the good work and enterprise to which he became a liberal subscriber.

Those facts, on the contrary, imposed a legal duty, and the referee has properly decided, and his decision and the judgment thereon should be affirmed, with costs.